IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA GREEN | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | Civil Action 3:21-cv-2512 |
| | § | |
| DELTA AIR LINES, INC., | § | **JURY DEMANDED** |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND**

TO THE HONORABLE COURT:

Plaintiff Debra Green presents her Complaint for unlawful discrimination in violation of 42 U.S.C. § 1981.

**PARTIES**

1. Debra Green is a citizen and resident of the United States, residing in San Diego County, California.

2. Delta Air Lines, Inc. is a domestic corporation and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, at its registered address, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

**JURISDICTION AND VENUE**

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

4. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

## BACKGROUND

**Foreseeability of the Problem**

6. A report noted by the EEOC states that 75 percent of employees who spoke out against workplace mistreatment faced some form of retaliation.[1]

7. A report by Ethics & Compliance Initiative finds that when employees at all levels are held accountable, retaliation is not as prominent; however, the retaliation rate is only 16 percent when managers are held accountable compared to approximately 40 percent when managers are not held accountable.[2]

**The Purpose of the Law**

8. The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

9. Employers may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

---

[1] https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8:4 J. Occupational Health Psychol. 247, 255 (2003)).
[2] https://www.ethics.org/knowledge-center/increasing-employee-reporting-free-from-retaliation/ (Last visited April 14, 2021).

10. The right to expect that corporations hire HR representatives qualified to follow discrimination and retaliation laws is essential to our community.

11. The right to expect that corporations will adequately train managers to follow discrimination and retaliation law is essential to our community.

12. The right to expect that corporations will supervise managers to follow discrimination and retaliation law is essential to our community.

13. The right to expect that corporations will prevent any form of discrimination or retaliate against persons who report discrimination is essential to our community.

14. The right to expect that corporations must care about workplace laws to protect us from damages is essential to our community.

**Delta Is Worldwide**

15. Delta Air Lines, Inc. ("Delta") is one of the major airlines in the United States and nearly 200 million travelers trust Delta to fly and get them to where they are going.[3] packages of all shapes and sizes in the United States and all over the world.

16. Delta has offices around the world employing over 75,000 employees.

17. Delta knows that discrimination and retaliation are foreseeable as a potential problem in its workplace.

---

[3] https://www.delta.com/us/en/about-delta/overview (Last visited October 7, 2021).

*Plaintiff's Complaint and Jury Demand*            *Page 3*

**Delta's Serious System Failure**

18. Delta hires human resource ("HR") personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

19. Delta fails to adequately train its managers to follow policies prohibiting discrimination and retaliation laws.

20. Delta fails to supervise its managers to ensure they follow policies prohibiting discrimination and retaliation laws.

**Consequences of Failure to Enforce**

21. Because Delta fails to hire qualified HR personnel and adequately train and supervise managers, the corporation discriminates and retaliates against by first disciplining the employee because of race and then terminating the employee after the employee reported concerns of violations.

22. Delta discriminated against and fired Debra Green for opposing discrimination in the workplace, although she was recognized as a high performer and a positive Customer Care Supervisor at the company.

23. If Delta had protected Ms. Green from retaliation, she would not have been terminated.

24. But for a fair investigation of Ms. Green's report and opposition to discrimination, she would still be employed at and contributing to the success of Delta.

25. Although foreseeable, Delta failed to prevent retaliation against Ms. Green.

26. Although foreseeable, Delta failed to prevent retaliation against Ms. Green when she reported discrimination.

27. Delta failed to conduct a fair investigation of Ms. Green's complaints.

28. Delta chose not to talk to all important witnesses in its investigation of her complaints.

29. Delta chose not to look at all important documents in its investigation of her complaints.

30. Delta chose not to evaluate Ms. Green with her peers in its investigation of her complaints.

31. Delta chose not to adequately train mangers on the signs to recognize discrimination.

32. Delta chose not to adequately train mangers on the signs to recognize retaliation.

33. Delta failed to monitor the workplace for signs of discrimination because managers and employees did not know how to recognize and prevent discrimination.

34. Delta failed to monitor the workplace for signs of retaliation because managers and employees did not know how to recognize and prevent retaliation.

35. Delta mangers recognize discrimination if someone makes racist comments, but managers are not adequately trained to look for signs of discrimination absent racial comments.

36. Delta chose not to adequately train managers that employees who discriminate are not going to admit to discriminating against employees.

37. Delta chose not to adequately train managers that retaliators are not going to admit to retaliating against employees.

38. Delta chose not to adequately train managers that people are afraid to report discrimination and retaliation because the discrimination and retaliation will only get worse.

**History of Discrimination and Retaliation**

39. Ms. Green is not the only person to have complained of discrimination or retaliation at Delta.

40. Many other persons have complained of discrimination and retaliation at Delta.

41. In continuing rather than eliminating retaliation, Ms. Green became the person being investigated rather than the manager being complained about.

42. Delta managers ignored the signs of discrimination and retaliation and did not respond to prevent the discrimination and retaliation.

43. Delta ignored Ms. Green's excellent history of performance at Delta.

44. Ms. Green received several positive customer reviews while employed at Delta.

45. Delta ignored multiple racially charged posts by Ms. Green's colleagues.

46. Ms. Green reported racial discrimination of one of her African American co-workers.

47. One of Ms. Green's co-workers, including Mariequa Muhammed, another Customer Care Supervisor, told other Delta employees that Ms. Green (Caucasian) was a member of the Ku Klux Klan ("KKK").

48. When Ms. Green reported the discrimination to her manager, Adrian Jones (African American), following Delta's chain of command policy, and Ms. Jones escalated the report to HR, Ms. Jones and HR began to retaliate.

49. Delta refused to protect Ms. Green from retaliation during the investigation; instead, she became the target of both HR and management for adverse actions.

**Policies Do Not Enforce Themselves**

50. Delta has written polices created for the purpose of following laws against discrimination and retaliation.

51. Delta knows that the written polices do not enforce themselves.

52. Delta violated its own policies by discriminating and retaliating against Ms. Green.

53. Delta's policies promised to protect Ms. Green from discrimination and retaliation.

54. Delta breached its promise to protect Ms. Green from discrimination and retaliation.

55. Delta refused to examine records of Ms. Green's evaluations as compared to other persons similarly situated to her.

56. Delta refused to compare Ms. Green's good performance with other persons similarly situated to her.

## Ms. Green Was a Positive Performer

57. Delta never gave Ms. Green a warning or performance write-up before receiving Ms. Green's report of discrimination.

58. Ms. Green's team members at Delta had not complained about her performance or management.

59. Ms. Green's customers praised her.

60. Delta gave Ms. Green good performance evaluations before she reported discrimination to HR.

61. Ms. Green had 20 years of customer service experience before Delta hired Ms. Green in 2015 as a part time Customer Service Agent.

62. In April 2017, Delta promoted Ms. Green to work full time as a Reservation Agent.

63. When Ms. Green completed her four-month training in August 2017 to become a Reservation Agent, Delta decided to promote her again to Customer Case Supervisor, because Ms. Green graduated at the top of her training class and Ms. Green's excellent performance.

**Bumping Up Against the Discriminatory Ceiling**

64. In April 2019, Ms. Green reported to her manager, following Delta's chain of command, that Delta employees were falsely stating Ms. Green was a member of the KKK.

65. Defendant immediately suspended Ms. Green after Ms. Green reported the racial discrimination.

66. Delta conducted a sham investigation of Ms. Green's claims.

67. Delta instructed all persons interviewed in connection to the investigation to keep the conversations confidential.

68. Multiple employees did not keep the conversations confidential.

69. Delta did not terminate the African American employees for discussing the investigation.

70. Delta terminated Ms. Green on May 17, 2019.

71. Delta states that it terminated Ms. Green for discussing the investigation but did not discipline or terminate other employees in her department for the same conduct.

**Delta Discriminated Because Of Race**

72. Corporations must not discriminate against persons because of race.

73. Delta did not evaluate Ms. Green as the same as her peers when it disciplined and terminated her employment.

74. Ms. Green was performing as good or better than her peers.

75. The difference is she is white.

76. Ms. Green was a top performer.

77. Ms. Green received a promotion since she started working at Delta in 2015.

78. Delta employees began making discriminatory comments about Ms. Green and accusing Ms. Green of being in the KKK.

79. Ms. Green is not and has never been a member of the KKK.

80. Some of the discriminatory comments include, "you don't look the same without your robe" and "the white one you always wear."

**Delta Retaliated for Opposing Discrimination**

81. Delta suspended her four days after Ms. Green reported racial discrimination.

82. During the interview with HR, a HR representative asked Ms. Green inappropriate questions, including about the similarities and differences in genitalia between races.

83. Ms. Green was given no information about the context of such line of questioning, nor was she told of what she was accused.

84. Delta allowed Alexis Edgmon (Caucasian) to poke fun at the investigation, tell Ms. Green that Ms. Green had a "KKK face," make racially insensitive comments about African Americans, violate Delta's no recording policy, and discuss the ongoing investigation while it was happening.

85. Ms. Edgmon was not terminated from her employment with Delta for these offenses.

86. April Haley and Brittany Coath, Delta employees, both admit to saying Ms. Green was a member of the KKK.

87. Ms. Haley and Ms. Coath were not terminated.

88. Ms. Green made another report through Delta's Ethics Line on May 7, 2019.

89. Ms. Green reported to Delta's Ethics Line the following: invasion of privacy, falsification of documentation, cyber stalking, and conspiracy to commit unlawful termination.

90. Ms. Green specifically stated on the Delta Ethics Line that Delta employees "wish to terminate me for being a complainant about harassment, discrimination and hostile work environment."

91. Ms. Green went on to say, "I believe that I am labeled as a troublemaker and that these ladies do not want to stop the harassment, they want to punish me for reporting it."

92. That is exactly what Delta wanted to do.

93. When Ms. Green went to Delta's Ethics Line, that was the nail in the coffin.

94. Delta terminated Ms. Green because she is white and reported racial discrimination.

95. Ms. Green was damaged severely because she lost her job, her career.

96. Ms. Green had to move to California just to find another job in her industry, for the same pay than what she was getting at Delta but significantly more difficult working conditions.

## CAUSES OF ACTION

**Section 1981 Violation**

97. Ms. Green's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by all citizens.

98. This law entitles each person to equal opportunity and treatment in employment.

99. When an employer acts adversely against a person because of that person's race, the law has been violated and the person may file suit and recover damages.

100. A person is also entitled to file suit and recover damages under Section 1981 for retaliation for opposing or reporting violations of Section 1981, or for participating in an investigation of a violation of Section 1981.

101. Ms. Green belongs to a protected group and was subjected to unwelcome harassment based on her race.

102. Delta knew or should have known of the harassment but took no prompt remedial action.

103. Ms. Green was subjected to ridicule or insult or other improper conduct based on Ms. Green's race.

104. The harassment was constant, obscene, obnoxious, shocking to the conscience of the ordinary person.

105. The harassment was severe and pervasive, interfering with the terms and conditions of her employment with Delta.

106. The constant harassment for months was severe and humiliating.

107. Ms. Green escalated the hostility on at least three different occasions and made reasonable efforts to prevent hostility.

108. These hostile actions and Ms. Green's termination by Delta constitute the required adverse employment action prohibited by Section 1981.

109. The harassment and termination were sufficiently severe or pervasive to alter the conditions of Ms. Green's employment with Delta.

110. The harassment was objectively and subjectively offensive.

111. The disparaging racial treatment or other improper conduct was unwelcomed and undesirable or offensive to Ms. Green.

112. The harassment of Ms. Green altered a term, condition, or privilege of her employment at Delta.

113. A reasonable person would find that the harassment created and was abusive working environment.

114. Employees of Delta participated in the harassment of Ms. Green.

115. Delta knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

116. Ms. Green opposed Delta denying persons the "right to make" contracts and denying the same security of persons and property as is enjoyed by all persons in the United States as required by federal law. *See* 42 U.S.C. § 1981.

117. Delta treated Ms. Green adversely after she opposed and reported unlawful discrimination.

118. Delta engaged in material adverse actions against Ms. Green, that might well dissuade a reasonable person from opposing or reporting the discrimination had they known they would face the adverse actions.

119. The termination of Ms. Green from Delta materially altered her employment, as well.

120. Delta violated the federal statute by intentionally discriminating and retaliating against Ms. Green; and, as a direct result of the discrimination and retaliation caused damages to Ms. Green.

121. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

122. Delta knew or should have known that its employees were discriminating against employees unlawfully and taken corrective action to prevent the discrimination within its control.

123. Prevention is the best tool for the elimination of harassment.

124. Delta did not take the steps necessary to prevent the harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

**Compensatory and Equitable Relief**

125. Ms. Green sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which she is entitled to recovery under her causes of action.

126. Ms. Green is also entitled to declaratory relief that a violation has occurred.

127. Ms. Green is also entitled to equitable relief in the form of an injunction against future discrimination or retaliation.

**Attorneys' Fees**

128. Ms. Green is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

129. Ms. Green is also entitled to receive punitive damages because Delta engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## JURY DEMAND

130.  Ms. Green request a trial by jury to the extent allowed by law.

WHEREFORE, Ms. Green requests that Defendant Delta Air Lines, Inc. answer and that on final trial, Ms. Green have judgment against Defendant for compensatory, declaratory, equitable, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which they may be entitled.

Respectfully submitted,

 /s/ Brian P. Sanford
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizbeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF
DEBRA GREEN**

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, I electronically served the foregoing document on all counsel of record via the Court's electronic filing system.

 /s/ Brian P. Sanford